UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HYPER LABS INC. d/b/a HYPERSCIENCE,<br><br>Plaintiff,<br><br>-against-<br><br>UMLAUT IT PTY LTD., and SHANE REID<br><br>Defendant. | Civil Action No.:<br><br><br>**COMPLAINT<br>AND JURY DEMAND** |

Plaintiff, Hyper Labs Inc. d/b/a Hyperscience ("Plaintiff" or "Hyperscience"), by and through its attorneys, Rivkin Radler LLP, for its Complaint against defendants, Umlaut IT Pty Ltd. ("Umlaut") and Shane Reid ("Reid") (collectively, "Defendants") hereby allege as follows:

## NATURE OF THE ACTION

1. Hyperscience is a leading provider of hyperautomation and enterprise artificial intelligence infrastructure software, and it sells licenses for its proprietary machine learning software designed to automate the extraction of data ("Software"). This is an action for, among other things, breach of contract resulting from Defendants' breaches of various agreements, including the Software Reseller Agreement, dated March 3, 2021 ("Reseller Agreement"), and Amended and Restated Order Form, dated October 29, 2021 ("Amended Order Form"), as further amended by a Letter Agreement, dated April 18, 2023 ("Letter Agreement," together with the Amended Order Form, the "Order Form"). Reid, a Director of Umlaut, negotiated and executed the agreements and directed, authorized, and/or carried out the wrongful conduct alleged herein on behalf of Umlaut. Umlaut breached the Reseller Agreement by making an unauthorized sale of a purported license for the Software to a third party in violation of the terms of the Reseller Agreement and failing to pay the license fees set forth therein. Upon information and belief, despite

Hyperscience having terminated the Reseller Agreement because of Umlaut's material breaches of the same, Umlaut wrongfully benefited and was unjustly enriched by receiving license fees from third parties through its continued unauthorized use of the Software and without paying Hyperscience the required fees. Additionally, Umlaut breached the Order Form by, among other things, failing to pay Hyperscience the sum of $660,000 in license fees due and owing thereunder. Further, upon information and belief, Umlaut was unjustly enriched by failing to uninstall the Software and continuing to possess and use it after the Order Form was terminated without paying Hyperscience license fees. Based on the foregoing, Umlaut is also liable for conversion, and Reid is liable for aiding and abetting conversion. Thereafter, on or about February 28, 2025, Hyperscience and Umlaut entered into a new Software Reseller Agreement ("New Reseller Agreement"), Purchase Order No. 1 (together with the New Reseller Agreement, the "New Reseller Agreement/Purchase Order No. 1) and Settlement Agreement and Mutual Release ("Settlement Agreement"), whereby Umlaut agreed, among other things, to make a $100,000 payment to Hyperscience by May 31, 2025. Umlaut, however, breached these agreements by failing to make timely payments and, to date, has only paid $60,000 of the foregoing amount; $40,000 remains due and owing. Further, upon information and belief, Umlaut has failed to permanently uninstall, delete or destroy Hyperscience's confidential information relating to the foregoing agreements as required by the terms therein, including permanently uninstalling, deleting or destroying all copies of the Software on Umlaut's systems, and thus, Hyperscience seeks injunctive relief ordering specific performance.

**PARTIES**

2.       Hyperscience is a Delaware corporation with its principal place of business located at One World Trade Center, 285 Fulton Street, Suite 45A, New York, New York 10007.

3. Upon information and belief, Umlaut is an Australian proprietary limited company with its principal place of business located at 50 Miller Street, North Sydney, NSW, 2060, Australia.

4. Upon information and belief, Reid is an individual residing in Dallas, Texas, and is a Director of Umlaut.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because the total matter in controversy, exclusive of interest and costs, exceeds the jurisdictional threshold of $75,000.00, and is between citizens of different states and/or a foreign country.

6. Additionally, Hyperscience and Umlaut agreed to the application New York law and the exclusive jurisdiction of courts in the State of New York for any disputes related to Order Form, Reseller Agreement, New Reseller Agreement, and Settlement Agreement. Accordingly, venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

7. The Court has specific jurisdiction over Reid because, upon information and belief, Reid is a Director of Umlaut, and he had direct involvement in directing, authorizing and/or participating in the: (i) negotiation and execution of the agreements referenced herein on behalf of Umlaut; and (ii) the wrongful conduct alleged herein relating Umlaut's breaches of the same, which were directed at and/or occurred in this jurisdiction.

## FACTS

**A. The Reseller Agreement**

8. On or about March 3, 2021, Hyperscience and Umlaut entered into the Reseller Agreement, pursuant to which Umlaut was authorized to act as an independent, non-exclusive, third-party sales agent for licenses of Hyperscience's Software.

9. Reid negotiated and executed the Reseller Agreement on behalf of Umlaut.

10. The Reseller Agreement provides that Umlaut was authorized to sell licenses for the Software to end users in Australia pursuant to the terms therein.

11. Section 4(a) of the Reseller Agreement provides that:

> All orders for Software licenses by Reseller shall be initiated by written orders sent to Hyperscience substantially in the form set forth in <u>Schedule B</u> and signed by Reseller, which shall request a Delivery Date during the term of this Agreement (each, a "**Purchase Order**"). All Purchase Orders shall refer to this Agreement and include, at a minimum, the number of licenses to the Software requested, the requested date of delivery by Hyperscience to the End User (the "**Delivery Date**"), the End User corporate name, and the postal address where the Software will be installed. . . . Reseller shall submit Purchase Orders to Hyperscience at least ten (10) business days prior to the Delivery Date. Hyperscience reserves the right to accept or reject Purchase Orders in its sole discretion or to cancel any Purchase Orders previously accepted if Hyperscience determines that Reseller is in default of its obligations under this Agreement. . . .

12. Pursuant to Section 6 of the Reseller Agreement, for each Software license sold, Umlaut was required to pay Hyperscience license fees pursuant to the provisions set forth in Schedule A attached thereto. In particular, the "Fees . . . for a Customer who is a first-time licensee of the Software (a "**New Customer**") will be equal to the Hyperscience List Price in effect at the time the Purchase Order for such license is submitted to Hyperscience, less the amount resulting from applying the applicable discount rate ("**Discount Rate**") against such List Price."

13. In or around January 2024, Umlaut, without Hyperscience's authorization, sold a purported license for the Software and improperly transferred a copy of the same to a third party, Singlife.

14. Prior to selling a purported license for the Software to Singlife, Umlaut never, as required by Section 4(a) of the of the Reseller Agreement, submitted a "Purchase Order" to

Hyperscience. As a result, Hyperscience was never provided an opportunity to accept or reject, and thus, never authorized, the transaction.

15. Further, the Reseller Agreement does not permit Umlaut to transfer a locally installable copy of the Software to any third party.

16. Additionally, upon information and belief, Singlife is located in Singapore, which is beyond the permitted "Territory" in the Agreement, which is limited to Australia.

17. Accordingly, the transaction never should have occurred.

18. Nonetheless, Umlaut completed the transaction and, upon information and belief, received license fees from Singlife in connection with Singlife's purchase and use of a purported license for the Software. However, Umlaut failed to pay Hyperscience the required license fees required under Schedule A of the Reseller Agreement.

19. As a result of Umlaut's material breaches of the Reseller Agreement, Hyperscience sent Umlaut a letter, dated October 3, 2024, terminating the Reseller Agreement.

20. Pursuant to Section 3(c) of the Reseller Agreement, upon termination of the same, all rights and licenses granted to Umlaut thereunder were terminated immediately.

21. Nonetheless, upon information and belief: (i) Singlife, and upon information and belief, other third parties, continued to wrongfully retain and use a copy of the Software without Hyperscience's authorization or a license; and (ii) upon information and belief, Umlaut continued to wrongfully benefit and be unjustly enriched by receiving license fees from Singlife and other third parties in connection with their unauthorized use of Hyperscience's Software. Further, Umlaut failed to remit the required license fees to Hyperscience in connection with the foregoing.

22. Upon information and belief, Reid directly and actively participated in the foregoing wrongful conduct, by, among other things, directing, authorizing and/or carrying out: (i) Umlaut's sale of a purported license of the Software to Singlife; (ii) Umlaut's failure to submit

5

a "Purchase Order" to Hyperscience and/or otherwise obtain authorization for the transaction; (iii) Umlaut's failure to pay Hyperscience any license fees required under Schedule A of the Reseller Agreement: (iv) Singlife's use of an unauthorized copy of the Software without a license; and (v) Umlaut's wrongful receipt of fees from Singlife, and upon information and belief, other third parties, in connection with their unauthorized use of Hyperscience's Software after termination of the Reseller Agreement.

**B. The Order Form**

23. On or about June 9, 2021, Hyperscience and Umlaut entered into an Order Form No. ANZ004 ("Original Order Form"), which had an effective date of May 28, 2021.

24. Whereas the Reseller Agreement authorized Umlaut to sell licenses for the Software, the Order Form provided a license for Umlaut to host the Software on computers it owns and controls to fulfill customer contracts using the Software. In particular, the Order Form provided Umlaut with a license to "install and use the Software in the Territory set forth on such Order Form in executable form as made available by Hyperscience for Licensee's use in fulfillment of its customer contracts on computers it owns or controls."

25. Reid negotiated and executed the Original Order Form on behalf of Umlaut.

26. On or about October 28, 2021, Hyperscience and Umlaut entered into an Amended and Restated Order Form No. ANZ004 ("Amended Order Form"), with an Effective Date of October 29, 2021.

27. Reid negotiated and executed the Amended Order Form on behalf of Umlaut.

28. The Amended Order Form provides that it is subject to the terms of the Master Software License Agreement ("MSLA"), which is incorporated by reference therein.

29. As with the Original Order Form, the Amended Order Form also provided Umlaut with a license to "install and use the Software in the Territory set forth on such Order Form in

executable form as made available by Hyperscience for Licensee's use in fulfillment of its customer contracts on computers it owns or controls." The Territory is defined therein as "Australia, New Zealand, Fiji, Singapore, Philippines, Hong Kong, Thailand, Malaysia, Indonesia, PNG".

30. In consideration for the license, the Amended Order Form required Umlaut to pay the following license fees: (i) Year 1 - $500,000; (ii) Year 2 - $500,000; and (iii) Year 3 - $500,000. The total license fees for the "Initial Term," defined as three (3) years from the Effective Date, is $1,500,000. The foregoing license fees were due for each respective year pursuant to the Payment Terms set forth in the Amended Order Form. Further, additional license fees would be charged if Umlaut processed additional pages using the Software beyond the page "Use Limits" set forth in the Amended Order Form.

31. As set forth in the Amended Order Form, as of the Effective Date, Umlaut paid $80,000 towards the Year 1 original license fees, reducing the amount due for Year 1 to $420,000.

32. However, Umlaut failed to timely pay the remaining $420,000 in license fees due for Year 1.

33. On or about April 18, 2023, Hyperscience and Umlaut entered into a Letter Agreement ("Letter Agreement," together with the Amended Order Form, the "Order Form"), which amended the amount due for Year 1.

34. The Letter Agreement provides that Umlaut shall pay Hyperscience $40,000 within 30 days of an invoice that was sent on the date of the Letter Agreement and $40,000 on each of May 18, 2023, June 18, 2023, and July 18, 2023, for a total of $160,000 over four (4) installments. As a result, Umlaut's total obligation for Year 1 was reduced from $420,000 to $160,000.

35. Reid negotiated and executed the Letter Agreement on behalf of Umlaut.

36. Despite reducing Umlaut's obligation for Year 1 to $160,000, Umlaut failed to the pay the same.

37. Umlaut also failed to pay the $500,000 in license fees required under the Order Form for Year 2.

38. As a result of the foregoing, on or about March 15, 2024, Hyperscience sent Umlaut a Notice of Material Breach wherein Hyperscience advised Umlaut that it materially breached the Order Form by failing to pay the contractually agreed-upon license fees for Year 1 and Year 2 and demanded payment within fourteen (14) days.

39. After Umlaut failed to respond to the Notice of Material Breach, on or about August 26, 2024, Hyperscience sent Umlaut a Notice of Termination, which terminated the Order Form effective March 29, 2024.

40. The Notice of Termination also demanded, pursuant to Section 4(e) of the MSLA, which was incorporated by reference in the Order Form, that Umlaut permanently uninstall, delete, or destroy any materials or information provided to Umlaut in connection with the Order form, including the Software. The Notice of Termination also asked Umlaut to confirm its compliance with the foregoing by completing a certificate attached thereto and returning it to Hyperscience by September 10, 2024. Umlaut failed to provide such confirmation or otherwise confirm its compliance with Section 4(e) of the Amended Order Form.

41. On or about October 3, 2024, Hyperscience sent Umlaut a final notice, through counsel, demanding payment of outstanding fees for Year 1 and Year 2 and advising that failure to pay all outstanding license fees owed under the Order Form would result in legal action.

42. Umlaut failed to pay any of the outstanding license fees due under the Order Form, totaling $660,000, which remains due and owing.

43. Upon information and belief, Reid directly and actively participated in the foregoing wrongful conduct, by, among other things, directing, authorizing and/or carrying out Umlaut's: (i) failure to pay the license fees due and owing under the Order Form: (ii) failure to permanently uninstall, delete or destroy the Software upon termination of the Order Form; (iii) failure to confirm its compliance with Section 4(e) of the Amended Order Form; (iv) continued use of the Software post-termination of the Order Form without paying any fees to Hyperscience.

**C. The Settlement Agreement and New Reseller Agreement/Purchase Order No. 1**

44. On or about February 28, 2025, Hyperscience, in a good faith effort to resolve the above disputes without litigation, agreed to enter into the Settlement Agreement with Umlaut.

45. On or about February 28, 2025, pursuant to the Settlement Agreement, Umlaut agreed to, and did, enter into the New Reseller Agreement/Purchase Order No. 1 with Hyperscience, in connection with which Umlaut agreed to pay a license fee of $100,000 by May 31, 2025. Umlaut also agreed to pay an additional $100,000 by May 31, 2026. Timely payment of the foregoing amounts was a condition precedent to the effectiveness of the releases set forth in the Settlement Agreement relating to Umlaut's breaches of the Reseller Agreement and Order Form.

46. Umlaut paid $50,000 on April 3, 2025, and $10,000 on July 16, 2025 (which was untimely), but failed the pay the remaining $40,000 due by May 31, 2025, which remains due and owing.

47. Despite multiple notices, Umlaut failed to make arrangements for payment of the above outstanding amount. As a result, on September 1, 2025, Hyperscience terminated the New Reseller Agreement and Settlement Agreement.

48. Upon information and belief, Umlaut continues to wrongfully retain a copy of the Software and use it without Hyperscience's authorization and without a license in violation of the

Order Form, Reseller Agreement, and New Reseller Agreement, and Umlaut continues to wrongfully benefit from the same without paying any fees to Hyperscience.

## COUNT ONE
### (Breach of the Reseller Agreement – Against Umlaut)

49. Hyperscience repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

50. Hyperscience and Umlaut entered into the Reseller Agreement, pursuant to which Umlaut was required to: (i) submit a "Purchase Order" and obtain Hyperscience's approval prior to a sale of any license for the Software; (ii) only sell licenses for the Software in Australia; and (iii) pay Hyperscience license fees for any sale of a license for the Software pursuant to Schedule A of the Reseller Agreement.

51. The Reseller Agreement is a valid and binding contract between Hyperscience and Umlaut.

52. Umlaut materially breached the Reseller Agreement by: (i) selling a purported license to a third party, Singlife, without submitting a "Purchase Order" or otherwise obtaining Hyperscience's approval for the transaction; (ii) selling a purported license to Singlife, which, upon information and belief is located in Singapore; and (iii) failing to pay Hyperscience the required license fees required under the Reseller Agreement.

53. Upon information and belief, Umlaut sold purported licenses to other third parties without authorization and without paying the required license fees in breach of the Reseller Agreement.

54. Umlaut continued to wrongfully retain and use a copy of the Software without a valid license or authorization by Hyperscience.

55. Hyperscience has substantially and materially performed under the Reseller

10

Agreement.

56. As a result of Umlaut's breaches, Hyperscience has suffered and will continue to suffer damages.

## COUNT TWO
### (Breach of the Order Form – Against Umlaut)

57. Hyperscience repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

58. Hyperscience and Umlaut entered into the Order Form, pursuant to which Umlaut was required to pay Hyperscience license fees.

59. The Order Form is a valid and binding contract between Hyperscience and Umlaut.

60. Umlaut materially breached the Order Form by failing to pay the license fees due thereunder, of which $660,000 remains due and owing.

61. Hyperscience has substantially and materially performed under the Order Form.

62. As a result of Umlaut's breaches, Hyperscience has suffered and will continue to suffer damages.

## COUNT THREE
### (Breach of the New Reseller Agreement/Purchase Order No.1 and Settlement Agreement – Against Umlaut)

63. Hyperscience repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

64. Hyperscience and Umlaut entered into the New Reseller Agreement/Purchase Order No. 1 and Settlement Agreement, pursuant to which Umlaut agreed to pay $100,000 to Hyperscience by May 31, 2025. Umlaut also agreed to pay an additional $100,000 to Hyperscience by May 31, 2026.

65. Umlaut paid $50,000 on April 3, 2025, and $10,000 on July 16, 2025, but failed the

pay the remaining $40,000 due by May 31, 2025, which remains due and owing.

66. Despite multiple notices, Umlaut still has failed to pay the outstanding amount due.

67. The New Reseller Agreement/Purchase Order No. 1 and Settlement Agreement are valid and binding contracts between Hyperscience and Umlaut.

68. Umlaut materially breached the New Reseller Agreement/Purchase Order No. 1 and Settlement Agreement by failing to timely pay the amounts due thereunder.

69. Upon information and belief, Umlaut continues to wrongfully retain and use a copy of the Software without a valid license or authorization by Hyperscience.

70. Hyperscience has substantially and materially performed under the Reseller Agreement.

71. As a result of Umlaut's breaches, Hyperscience has suffered and will continue to suffer damages.

## COUNT FOUR
### (Unjust Enrichment – against all Defendants)

72. Hyperscience repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

73. Hyperscience made significant investments in creating, marketing, and selling licenses for the Software.

74. Despite Hyperscience having terminated the Reseller Agreement, Order Form, and New Reseller Agreement, Defendants continue to wrongfully retain a copy of the Software and use it without Hyperscience's authorization or a license.

75. Despite Hyperscience having terminated the Reseller Agreement, Order Form, and New Reseller Agreement, Defendants, upon information and belief, have allowed third parties to

12

continue to wrongfully retain and use a copy of the Software without Hyperscience's authorization or a valid license.

76. Upon information and belief, Defendants continue to wrongfully profit from the foregoing at Hyperscience's expense by receiving fees from third parties in connection with their unauthorized use of the Software without paying the required fees to Hyperscience in connection with the same.

77. Defendants have failed to pay Hyperscience the required fees for its continued possession and use of the Software.

78. Defendants should not be permitted in equity and good conscience to retain any wrongfully obtained profit and/or benefit, including the fair value of the use of the Software, from their unauthorized use of the Software at Hyperscience's expense.

79. As a result of the foregoing, Defendants have been unjustly enriched in an amount to be determined at trial.

### COUNT FIVE
### (Conversion – Against Umlaut)

80. Hyperscience repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

81. Hyperscience is the lawful owner of the Software.

82. Umlaut is no longer licensed to possess or use the Software.

83. Upon information and belief, Umlaut, despite due demand, has failed to return, permanently uninstall, delete, or destroy all copies of the Software and other confidential information belonging to Hyperscience, including marketing and training materials in Umlaut's possession.

84. Umlaut has acted with malice and/or reckless disregard for Hyperscience's ownership rights and intellectual property rights over the Software.

85. Umlaut has improperly and unlawfully exercised dominion and possession over the Software, which has caused and will continue to cause Hyperscience to suffer damages.

**COUNT SIX**
**(Aiding and Abetting Conversion – Against Reid)**

86. Hyperscience repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

87. Reid knowingly aided and abetted Umlaut's conversion of the Software as against Hyperscience.

88. Reid knew, or reasonably should have known, that Hyperscience is the lawful owner of the Software.

89. Reid knew, or reasonably should have known, Hyperscience is no longer licensed to possess or use the Software.

90. Nonetheless, upon information and belief, Reid directed, authorized and/or carried out Umlaut's: (i) continued possession and use of the Software; and (ii) failure to permanently uninstall, delete, or destroy all copies of the Software.

91. In fact, upon information and belief, Reid has directed, authorized and/or carried out Umlaut's continued collection of fees from third parties through Umlaut's continued wrongful possession and use of the Software without Hyperscience's authorization or a license.

92. The acts and conduct of Reid alleged herein substantially assisted, supported, induced, supplemented, endorsed and/or he recklessly participated in Umlaut's conversion of the Software.

93. Reid has acted with malice and/or reckless disregard for Hyperscience's ownership rights and intellectual property rights over the Software.

94. As a result of the foregoing, Reid has caused and will continue to cause Hyperscience to suffer damages.

## COUNT SEVEN
### (Specific Performance – Against Umlaut)

95. Hyperscience repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

96. The Software is the confidential and proprietary property of Hyperscience.

97. The Reseller Agreement, Order Form, and New Reseller Agreement provided Umlaut a limited license to possess and use the Software in exchange for payment of license fees.

98. Hyperscience delivered the Software and supporting documentation, and Hyperscience has, at all relevant times, been ready, willing and able and has performed all its duties under the Reseller Agreement, Order Form, and New Reseller Agreement.

99. Umlaut has materially breached the Reseller Agreement, Order Form, and New Reseller AGreement in several respects, as set forth above.

100. By letter dated August 26, 2024, Hyperscience provided Umlaut with Notice of Termination of the Order Form. The Notice of Termination also demanded, pursuant to Section 4(e) of the MSLA, which was incorporated by reference in the Order Form, that Umlaut permanently uninstall, delete, or destroy any materials or information provided to Umlaut in connection with the Order form, including the Software. The Notice of Termination also asked Umlaut to confirm its compliance with the foregoing by completing a certificate attached thereto and returning it to Hyperscience by September 10, 2024.

101. By letter dated October 3, 2024, Hyperscience provided Umlaut with a notice of termination of the Reseller Agreement.

102. By letter dated September 1, 2025, Hyperscience provided Umlaut with a notice of termination of the New Reseller Agreement.

103. Umlaut no longer has any right to possess or use the Software or any of Hyperscience's related confidential information, to wit: (i) Section 3(c) of the Reseller Agreement and New Reseller Agreement provide that upon termination of the same, all rights and licenses granted to Umlaut thereunder were terminated immediately; and (ii) Section 4(e) of the MSLA provides that upon termination of the Order Form, all rights and licenses to the Software granted to Umlaut will terminate.

104. Pursuant to Section 3(c) of the Reseller Agreement and New Reseller Agreement and Section 4(e) of the MSLA, incorporated by reference in the Order Form, Umlaut was required to permanently uninstall, delete, or destroy any materials or information provided to Umlaut in connection with the agreements, including all copies of the Software on its system.

105. Despite due demand, and in material breach of the Reseller Agreement, New Reseller Agreement, and Order Form, Umlaut, upon information and belief, has failed to comply with Section 3(c) of the Reseller Agreement and New Reseller Agreement and Section 4(e) of the MSLA, incorporated by reference in the Order Form, and Umlaut has failed to confirm such compliance.

106. Hyperscience has no adequate remedy at law for Umlaut's wrongful possession and use of Hyperscience's Software and related confidential information.

107. Hyperscience, therefore, seeks an order of specific performance, pursuant to Section 3(c) of the Reseller Agreement and New Reseller Agreement and Section 4(e) of the MSLA, incorporated by reference in the Order Form, demanding that Umlaut return, permanently

uninstall, delete, or destroy any materials or information provided to Umlaut in connection with the agreements, including all copies of the Software on its system.

## COUNT EIGHT
### (Breach of the Reseller Agreement, Order Form, New Reseller Agreement/Purchase Order No. 1 and Settlement Agreement – Against Reid)

108. Hyperscience repeats, reiterates and realleges each and every allegation contained in the above paragraphs with the same force and effect as if set forth at length herein.

109. Upon information and belief, at all relevant times, Umlaut was a mere instrument under the complete domination and control of Reid. Upon information and belief, Reid ran Umlaut, and in particular its U.S. operations, out of his home and/or WeWork office spaces.

110. Upon information and belief, Reid disregarded corporate formalities in his operation of Umlaut and failed to maintain adequate capitalization, including in connection with paying Hyperscience in connection with the Reseller Agreement, Order Form, New Reseller Agreement/Purchase Order No. 1, and Settlement Agreement.

111. Reid has acted as the alter ego of Umlaut within the meaning of the law of the State of New York. Therefore, Reid is jointly and severally liable to Hyperscience for the amounts due in connection with Umlaut's breaches of the Reseller Agreement, Order Form, New Reseller Agreement/Purchase Order No. 1, and Settlement Agreement.

**WHEREFORE**, Plaintiff requests judgment against Defendants as follows:

(i)  Granting Plaintiff injunctive relief directing Umlaut to permanently delete and uninstall the Software and otherwise comply with Section 3(c) of the Reseller Agreement and New Reseller Agreement, and Section 4(e) of the MSLA, which is incorporated by reference in the Order Form;

(ii)  Awarding Plaintiff actual, compensatory and consequential damages;

(iii)  Awarding Plaintiff his attorneys' fees, costs and disbursements; and

      (iv)    Granting Plaintiff such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated: September 2, 2025 | By: *s/ Gene Y. Kang* <br> Gene Y. Kang <br> **RIVKIN RADLER LLP** <br> 25 Main Street, Suite 501 <br> Court Plaza North <br> Hackensack, New Jersey 07601 <br> P: (201) 287-2489 <br> F: (201) 489-0495 <br> gene.kang@rivkin.com <br><br> -and- <br><br> 477 Madison Avenue <br> New York, New York 10022 <br> P: (212) 455-9555 <br> F: (212) 687-9044 <br><br> *Attorneys for Plaintiff, Hyper Labs Inc. d/b/a Hyperscience* |

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury of any issue so triable as of right.

Dated: September 2, 2025

*s/ Gene Y. Kang*
Gene Y. Kang
**RIVKIN RADLER LLP**
25 Main Street, Suite 501
Court Plaza North
Hackensack, New Jersey 07601
P: (201) 287-2489
F: (201) 489-0495
gene.kang@rivkin.com

-and-

477 Madison Avenue
New York, New York 10022
P: (212) 455-9555
F: (212) 687-9044

*Attorneys for Plaintiff, Hyper Labs Inc. d/b/a Hyperscience*